IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01697-PAB-MEH

LINDSAY EPPICH,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
an Illinois Corporation,

    Defendant.
_____

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT**
_____

This insurance case comes before the Court on defendant State Farm Mutual Automobile Insurance Company's "Motion to Dismiss and/or for Summary Judgment" [Docket No. 3]. The Court's jurisdiction is proper under 28 U.S.C. § 1332(a) based on the existence of diversity of citizenship and an amount in controversy over $75,000.

**I. BACKGROUND**

On the night of July 16, 2005, plaintiff Lindsay Eppich was riding her bicycle on the Animas River Trail in Durango, Colorado. William Charles Downs was traveling in the opposite direction on the Animas River Trail on a Yamaha motorcycle when he struck and injured Ms. Eppich. Mr. Downs' motorcycle was not licensed, registered, or insured, and it did not have the tires, mirror, horn, muffler, head lamps, and tail and stop lamps that it would need to be "street legal."

At the time of the accident, Ms. Eppich was insured under a policy (the "Policy") issued by defendant State Farm. The Policy contains a section entitled "SECTION III – UNINSURED MOTOR VEHICLE – COVERAGE U AND UNINSURED MOTOR VEHICLE PROPERTY DAMAGE – COVERAGE U1." Notice of Removal [Docket No. 1], ex. C, pt. A-2 (Mot. to Dismiss and/or for Sum. J.) [Docket No. 1-5] at 3. This section of the Policy provides the following statement of coverage:

> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be sustained by an **insured** and caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle**.

Notice of Removal, ex. C, pt. A-2 at 3 (bold, italicized typeface in original). The phrases printed in bold, italicized type represent terms which are defined in the Policy – either in the same section or in a preliminary section of the Policy, *see* Notice of Removal, ex. C, pt. A-1 (Mot. to Dismiss and/or for Sum. J.) [Docket No. 1-4] at 19.

According to the relevant provision of the Policy, "**Uninsured Motor Vehicle** – means . . . a land motor vehicle, the ownership, maintenance or use of which is . . . not insured or bonded for bodily injury liability at the time of the accident . . . ." Notice of Removal, ex. A, pt. 2 at 3 (bold, italicized typeface in original). The Policy then explains that "[a]n **uninsured motor vehicle** does not include a land motor vehicle . . . designed for use mainly off public roads except while on public roads . . . ." Notice of Removal, ex. C, pt. A-2 at 3 (bold, italicized typeface in original).

In 2005, Ms. Eppich filed a claim under the Policy's uninsured motor vehicle provision. On May 19, 2008, State Farm denied Ms. Eppich's claim for coverage.

According to State Farm, the Policy's exclusion of coverage for damages from bodily injury caused by uninsured land motor vehicles for use mainly off public roads except while on public roads precluded her claim.

On July 15, 2008, Ms. Eppich filed an action against State Farm in the District Court for La Plata County, Colorado asserting two claims for relief: "Uninsured Motorist Benefits Under the State Farm Policy" and "Bad Faith Insurance Practices – Breach of Contract."  See Notice of Removal, ex. A (Compl. and Jury Demand) [Docket No. 1-2]. On August 8, 2008, State Farm filed the present motion in state court.  See Notice of Removal, ex. C [Docket Nos. 1-4, 1-5, 1-6] (Mot. to Dismiss and/or for Sum. J.).  On August 11, 2008, State Farm removed the case to this Court under 28 U.S.C. §§ 1441(a) and 1332(a).  See Notice of Removal [Docket No. 1].  On October 3, 2008, Ms. Eppich filed her response to the present motion.  See Pl.'s Resp. to Def.'s Mot. to Dismiss and/or for Sum. J. [Docket No. 20].  On October 17, 2008, State Farm filed a reply.  See Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss and/or for Sum. J. [Docket No. 24].  Thus, State Farm's motion to dismiss or, in the alternative, for summary judgment is now ripe for disposition.

Although State Farm presents its motion as one for dismissal under Federal Rule of Civil Procedure 12(b)(6) or for summary judgment under Federal Rule of Civil Procedure 56, the motion itself focuses almost entirely on the summary judgment argument.  For the reasons discussed below, defendant's motion for summary judgment is denied.  As a consequence, the motion to dismiss under Rule 12(b)(6) is untenable and denied as well.

## II. ANALYSIS

### A. Summary Judgment – Legal Standard

According to Federal Rule of Civil Procedure 56(c), a court should grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted).

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a

minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). However, to be clear, "it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

A court may not consider all proffered evidence when ruling on a summary judgment motion; only admissible evidence may enter the analysis. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). When viewing the permissible evidence, courts are to make reasonable inferences therefrom in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

**B.  Interpretation of Insurance Policies**

Under Colorado law, interpretation of the terms of an insurance policy, as with any contract, is a question of law to be decided by the court.[1]  *See Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 (Colo. 2004); *see also In re Aramark Leisure Servs.*, 523 F.3d 1169, 1176 (10th Cir. 2008).  In interpreting an insurance policy, unless the language is ambiguous, courts are to give effect to the intent and reasonable expectations of the parties and to enforce the policy's plain language.  *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007).  "When faced with terms in an insurance policy that are not defined, Colorado law dictates that such terms be given their plain, ordinary meaning and interpreted according to the understanding of the average purchaser of insurance."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 306 (Colo. 2003) (alteration marks omitted).

The initial question in construing an insurance policy – whether the policy terms are ambiguous – also is a matter of law.  *See State Farm Mut. Auto. Ins. Co. v. Mendiola*, 865 P.2d 909, 912 (Colo. App. 1993).  Such terms are ambiguous if they are susceptible to more than one reasonable interpretation.  *Hoang*, 149 P.3d at 801.  In making the ambiguity determination, courts are to view the policy as a whole, using the generally accepted meaning of the words employed.  *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1060 (Colo. 2005).  Courts "may consider extrinsic evidence regarding the meaning of the written terms, including evidence of local usage and of the

---

[1] The parties assume applicability of Colorado law by citing primarily to it, and I operate under that same assumption.  *See*, *e.g.*, *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

circumstances surrounding the making of the contract." *Pub. Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006). However, courts may not consider extrinsic expressions of intent by the parties. *Id.* Furthermore, the mere fact that the parties disagree about the meaning of a provision does not in itself mean the term is ambiguous. *Snipes v. Am. Family Mut. Ins. Co.*, 134 P.3d 556, 558 (Colo. App. 2006).

Any ambiguities in an insurance policy that a court may encounter are to be construed against the insurer, as the drafter of the policy. *See State Farm Mut. Auto Ins. Co. v. Nissen*, 851 P.2d 165, 167 (Colo. 1993). "However, this rule of construction against the insurer cannot be applied where the language is unambiguous and there is nothing to construe." *First Fin. Ins. Co. v. Albertson's, Inc.*, 91 P.3d 470, 472 (Colo. App. 2004) (citing *Jorgensen v. St. Paul Fire & Marine Ins. Co.*, 408 P.2d 66, 68 (Colo. 1965)).

### C. Coverage Under the Policy

The focus of State Farm's motion for summary judgment is the Policy language explaining that "[a]n uninsured motor vehicle does not include a land motor vehicle . . . designed for use mainly off public roads except while on public roads . . . ." Notice of Removal, ex. C, pt. A-2 at 3 (bold, italicized typeface omitted). The parties dispute the proper statutory definition of a "motor vehicle" and whether public policy permits an exclusion of coverage in Ms. Eppich's circumstances. However, the present analysis

does not need to be so expansive, as the Court concludes that State Farm's motion for summary judgment is properly denied based on the language of the Policy alone.[2]

Generally, "[t]he rights and duties of the parties to an automobile insurance policy are defined by the terms and conditions of the insurance contract." *Allstate Indem. Co. v. Gonzales*, 902 P.2d 953, 955 (Colo. App. 1995). As a starting point then, under the Policy's unambiguous language, Ms. Eppich is entitled coverage for "bodily injury . . . caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." Notice of Removal, ex. C, pt. A-2 at 3 (bold, italicized typeface omitted). The critical question in this case, therefore, is whether Mr. Downs' motorcycle is an "uninsured motor vehicle." The unambiguous language of the Policy explains first, that the motorcycle must be "a land motor vehicle" and second, that "the ownership, maintenance or use of which is . . . not insured or bonded for bodily injury liability at the time of the accident . . . ." Notice of Removal, ex. A, pt. 2 at 3. There is no debate between the parties that the second requirement is met in this case.

As for the first requirement, the Policy language indicates that, contrary to State Farm's apparent contention, a vehicle's status as one which is "designed for use mainly off public roads" will not place it outside the definition of a "land motor vehicle." The term "land motor vehicle" is not defined in the Policy; therefore, the Court gives it the plain meaning its context requires. By referencing a "land motor vehicle . . . designed for use mainly off public roads," Notice of Removal, ex. C, pt. A-2 at 3, the Policy

---

[2] While there is precedent allowing the Court to address the broader legal question without first interpreting the policy language, *see DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 169 (Colo. 2001), the Court believes that the more prudent tack is for this Court to avoid speculative, unbinding sorties into broad state law questions.

8

indicates that off-road-type vehicles are a contemplated subset of land motor vehicles. As such, vehicles which are designed for use mainly off public roads fall within the definition of a "land motor vehicle" under the Policy.

The next step is to determine whether Mr. Downs' motorcycle qualifies as an "uninsured vehicle" in light of the Policy language excluding "a land motor vehicle . . . designed for use mainly off public roads except while on public roads." Notice of Removal, ex. C, pt. A-2 at 3. This provision contains two important components. The first singles out land motor vehicles "designed for use mainly off public roads." While certain categories of vehicles have been found to be "designed for use mainly off public roads," as a matter of law, *see Keely v. Allstate Ins. Co.*, 835 P.2d 584, 585-86 (Colo. App. 1992) (regarding snowmobiles), the same categorical approach cannot be taken with respect to motorcycles. The use Mr. Downs' motorcycle was "designed for" is not readily apparent from the record currently before the Court. While it appears that his vehicle was not in "street legal" condition at the time of the accident, its contemporaneous condition is not the same thing as its intended, i.e. "designed-for," use. For this reason alone, State Farm has not met its burden at summary judgment by proving the absence of a genuine dispute concerning a material fact in the case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, the greater barrier to State Farm's motion for summary judgment is the second component of the Policy's final provision at issue: "except while on public roads." Pursuant to this clause, irrespective of whether Mr. Downs' motorcycle is "designed for use mainly off public roads," it will be deemed an "uninsured motor vehicle" if it collided with Ms. Eppich while on a public road. State Farm appears to

believe that "public road" means "public road for motor vehicles." However, it has not provided any support for that position. The only support the Court could find for such a narrow construction of the term "road" is in the Colorado Revised Statutes' Article on snowmobiles. *See* Colo. Rev. Stat. Ann. § 33-14-101(12) (West 2009) ("'Street', 'road', 'freeway', or 'highway' means the entire right-of-way between boundary lines of any of such public ways when any part thereof is open to the use of the public as a matter of right for the purpose of motor vehicle travel.").

The weight of authority, however, holds that a "public road" is a thoroughfare of a broader nature. *See also Lovvorn v. Salisbury*, 701 P.2d 142, 144 (Colo. App. 1985) ("[A] public road is open to all members of the public for *any* uses consistent with the dimensions, type of surface, and location of the roadway." (emphasis in original)); Colo. Rev. Stat. Ann. § 33-1-102(36) (West 2009) ("'Public road' means the traveled portion and the shoulders on each side of any road maintained for public travel by a county, city, or city and county, the state, or the United States government and includes all structures within the limits of the right-of-way of any such road."); Colo. Rev. Stat. Ann. § 33-10-102(20) (West 2009) (same); Colo. Rev. Stat. Ann. § 37-95-103(11) (West 2009) ("'Public roads' includes all public highways, roads, railroads, and streets in the state, whether maintained by the state, a county, a city, or any other political subdivision."); Colo. Rev. Stat. Ann. § 42-20-103(7) (West 2009) ("'Public road' means every way publicly maintained and opened to the use of the public for the purposes of vehicular travel, including, but not limited to, streets, bridges, toll roads, tunnels, and state and federal highways."); *see also* Merriam-Webster's Collegiate Dictionary 1076

(11th ed. 2007) (defining "road" as "an open way for vehicles, persons, and animals; especially one lying outside of an urban district").

Furthermore, through a series of cross-references, the Uniform Motor Vehicle Law defines a "road" as "any highway" and defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel . . . ."  Colo. Rev. Stat. Ann. §§ 42-1-102(83), (43) (West 2009).  Finally, the statute defines "vehicle" as

> any device which is capable of moving itself, or of being moved, from place to place upon wheels or endless tracks. 'Vehicle' *includes any bicycle*, but such term does not include any wheelchair as defined by subsection (113) of this section, or any off-highway vehicle, snowmobile, any farm tractor, or any implement of husbandry designed primarily or exclusively for use and used in agricultural operations or any device moved by muscular power or moved exclusively over stationary rails or tracks or designed to move primarily through the air.

Colo. Rev. Stat. Ann. §§ 42-1-102 (112) (West 2009) (emphasis added).  Based on these definitions, a public bike path is a "public road."

Ultimately, the Court does not have sufficient facts before it to make a definitive conclusion regarding the character of the Animas River Trail.  These facts are material to the disposition of State Farm's motion.  Because the burden is on the moving party to establish that it is entitled to summary judgment despite all inferences being made in the nonmoving party's favor, summary judgment is precluded by this uncertainty.

### D.  Bad Faith Breach of Contract

"For an insured to prevail on a bad faith claim against an insurer, the insured must establish the insurer acted unreasonably, causing damages to the insured." *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) (citing

*Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984)).  Furthermore, "[t]he question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances."  *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984).  The reasonableness of an insurer's conduct, in turn, is gauged objectively, based on proof of industry standards.  *Bankr. Estate of Morris*, 192 P.3d at 524 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo.1985)).  Finally, "[w]hen conflicting evidence exists, what constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."  *Bankr. Estate of Morris*, 192 P.3d at 524 (citing *Rine v. Isham*, 382 P.2d 535, 537 (1963); *Scoular Co. v. Denney*, 151 P.3d 615, 620 (Colo. App. 2006)).

In the present case, there are genuine issues as to disputed material facts regarding State Farm's denial of Ms. Eppich's claim.  Because the facts regarding the underlying denial of Ms. Eppich's claim are not fully developed, the Court is not in a position at this time to make a determination as to the reasonableness of State Farm's conduct.  Therefore, State Farm is not entitled to judgment as a matter of law on Ms. Eppich's bad faith breach of contract claim either.

### III. CONCLUSION

For the reasons state above, it is

**ORDERED** that defendant State Farm Mutual Automobile Insurance Company's Motion to Dismiss and/or for Summary Judgment [Docket No. 3] is DENIED.  It is further

**ORDERED** that pursuant to Magistrate Judge Michael E. Hegarty's October 14, 2008 minute order [Docket No. 23], the parties shall submit a status report within five days of the entry of this order.

DATED September 30, 2009.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge